**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 18-04911 (EAG) |
| ARQUIDIOCESIS DE SAN JUAN DE PUERTO RICO, | CHAPTER 11 |
| DEBTOR. | FILED & ENTERED ON 03/18/2019 |

**OPINION AND ORDER**

**I.      Procedural History.**

On August 29, 2018, the Arquidiocesis de San Juan de Puerto Rico, also known as the

Iglesia Católica Apostólica y Romana, filed a voluntary petition for relief under chapter 11 of

the Bankruptcy Code.[1]  (Bankr. Dkt. No. 1.)  On August 31, 2018, the debtor amended the

petition to add "Roman Catholic Church in Puerto Rico" and "Arzobispado de San Juan" as

additional d/b/a names.  (Bankr. Dkt. No. 14.)

The bankruptcy filing was prompted by pre-judgment attachment orders entered in

several consolidated cases before the Court of First Instance of Puerto Rico, San Juan Part.  See

Cons. Cases Nos. SJ2016CV00131, SJ2016CV00143, and SJ2016CV00156.  The cases were

brought by 184 current and former teachers and other employees of various Catholic schools

---

[1]Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico.  And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

in Puerto Rico (the "state court plaintiffs") following the termination of the Catholic school employees pension plan. Id. The attachment order directed the marshal to:

> seize assets and moneys of the Holy Roman Catholic and Apostolic Church in an amount of $4,700,000.00 to secure the payment of plaintiffs' pensions, including bonds, values, motor vehicles, works of art, equipment, furniture, accounts, real estate, and any other asset belong[ing] to the Holy Roman Catholic and Apostolic Church, and any of its dependencies, that are located in Puerto Rico.

(Pl. Ex. VV.)

The state court plaintiffs attached bank accounts at Banco Popular de Puerto Rico belonging to the Archdiocese of San Juan and various parishes located within the Archdiocese. Upon the filing of the bankruptcy petition, Banco Popular released the funds held in the accounts belonging to the Archdiocese, but placed an administrative freeze on the accounts belonging to the parishes.

On September 3, 2018, the debtor filed an adversary complaint against the state court plaintiffs and Banco Popular, seeking, among other things, a court order releasing the frozen accounts. (Adv. Proc. 18-00099, Adv. Dkt. No. 1.) The debtor moved for a temporary restraining order, and a hearing was held on September 7, 2018. (Adv. Dkt. Nos. 2, 289, 301 & 304.) In order to resolve the matter, the court had to first determine what assets held by the Roman Catholic Church and its various parishes constituted property of the bankruptcy estate.

The Catholic Church in Puerto Rico is made up of six dioceses based on geographical location: the Archdiocese of San Juan and the Dioceses of Caguas, Fajardo-Humacao, Ponce, Mayaguez, and Arecibo. The debtor maintained that, despite listing the "Roman Catholic Church in Puerto Rico" as a d/b/a in the amended bankruptcy petition, that the debtor in the case was only the Archdiocese of San Juan.

2

The court rejected that position, adopting the reasoning taken by both the Supreme Court of Puerto Rico and the district court of Puerto Rico and finding that:

> the bankruptcy filing, and therefore the automatic stay, "benefits and protects against collection actions and asset attachments and seizures," all the assets of the Roman Catholic Church of Puerto Rico, unless those assets are owned by fragments of the Church that are formally incorporated. . . .

(Bankr. Dkt. No. 35; Adv. Dkt. No. 301.)

Following this determination, the court granted the debtor extensions of time to gather the necessary information to complete the schedules, the statement of financial affairs, monthly operating reports, and other required disclosures as to all property of the Roman Catholic Church in Puerto Rico not "owned by fragments of the Church that are formally incorporated."

On February 1, 2019, the state court plaintiffs filed a motion to dismiss the bankruptcy case, asserting that the debtor had not complied with its reporting requirements. (Bankr. Dkt. No. 278.) The debtor filed an opposition on February 18, 2019. (Bankr. Dkt. No. 303.)

The matter was set for a hearing on March 1, 2019, together with a motion to compel additional financial disclosures and a motion to lift stay, both filed by the state court plaintiffs. (Bankr. Dkt. Nos. 73, 141 & 282.) A motion to dismiss filed by the United States trustee was also set to be heard, but it was withdrawn prior to the hearing. (Bankr. Dkt. Nos. 190, 282, 295 & 310.)

During the hearing, the court heard testimony from Father Jorge Luis Saenz Ramos, the Judicial Vicar of the Archdiocese of San Juan; Father Miguel Alberto de Angel, the Vicar of Administration of the Diocese of Caguas; Doris Barroso Vicens, the debtor's restructuring analyst; Rafael Portela, the debtor's real estate broker and advisor; and Wigberto Lugo

3

Mender, the debtor's accountant. For each witness, a declaration under penalty of perjury was read into the record in lieu of the witness's direct testimony. (Bankr. Dkt. No. 327.) The witnesses were sworn in and were available for cross-examination and re-direct. At the conclusion of the hearing, the matter was taken under advisement.

## II.     Jurisdiction.

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## III.     Findings of Fact.

After careful consideration of the witnesses' testimonies and the contents of the documents introduced as evidence, as well as the joint statement of uncontested facts contained in the pretrial report (Bankr. Dkt. No. 322), the court makes the following findings of fact and conclusions of law pursuant to Rule 52(a), made applicable to this contested matter by Bankruptcy Rules 7052 and 9014(c).

Prepetition, on June 11, 2018, the Puerto Rico Supreme Court held in the case of Acevedo Feliciano v. Iglesia Católica Apostólica, 2018 T.S.P.R. 106:

> [I]t is unquestionable that the Catholic Church has and enjoys its own legal personality in Puerto Rico. Therefore, different from other religious institutions, it is not required to carry out a formal act of incorporation to have legal personalty. As a matter of fact, that reality is stated in the Registry of Corporations of the State Department of Puerto Rico. Therefore, inasmuch as the entities created by the Catholic Church serve as alter egos or its entities doing business as, without independently submitting to an ordinary incorporation process (as Academia Perpetuo Socorro did at a time) they are mere indivisible fragmentations of the Catholic Church with no legal personality of their own.

Plts. Ex. B. at p. 16 (footnote omitted); (Bankr. Dkt. No. 322 at ¶ 1.)

Several months after this decision, on August 29, 2018, the debtor filed the voluntary petition, as amended, in this bankruptcy case.  (Bankr. Dkt. Nos. 1, 14 & 111; Bankr. Dkt. No. 322 at ¶ 2.)  The schedules and statement of financial affairs were not filed with the petition. Six days prior to the bankruptcy filing, on August 23, 2018, the Diocese of Arecibo was incorporated.  (Bankr. Dkt. No. 322 at ¶ 19.)

On August 30, 2018, the district court for the District of Puerto Rico denied a request by the Dioceses of Ponce and Mayaguez for a preliminary injunction barring the enforcement against them of the attachment order issued by the Court of First Instance in the Acevedo Feliciano case.  (Civ. Case No. 18-1600(PAD)).  The district court, taking judicial notice of the bankruptcy filing, held:

> Based on the Puerto Rico Supreme Court's decision of June 11, 2018, the dioceses are indivisible fragments of the legal personality of the Roman Catholic Church in Puerto Rico, lacking legal or juridical personality unless formally incorporated. . . .  As of today, that holding stands.  Thus, the bankruptcy filing benefits and protects against collection actions and asset attachments and seizures, all dioceses in that situation, including the Diocese of Ponce and the Diocese of Mayaguez.

(Plts. Ex C at p. 2; Bankr. Dkt. No. 322 at ¶ 6); Diocese of Ponce, et al. v. Gonzalez, Civ. Case No. 18-1600(PAD).

And, on September 7, 2018, this court, in adversary proceeding 18-00099, denied the debtor's request to lift the administrative freeze on funds held in accounts belonging to church parishes held at Banco Popular due to it essentially being moot, ruling:

> the . . . [debtor] is, for the purposes of this bankruptcy filing, the same juristic personality recognized as the Roman Catholic Church of Porto [sic] Rico. Ponce v. Roman Catholic Apostolic Church, 210 U.S. 296, 303, 28 S. Ct. 737, 739 (1908);

5

see <u>Acevedo Feliciano v. Iglesia Católica Apostólica y Romana</u>, 2018 TSPR 106 at *18 (Así, en la medida que las entidades creadas por la Iglesia Católica funjan como alter egos o entidades doing business as de ésta, sin someterse independientemente a un proceso ordinario de incorporación (como en su momento lo hizo la Academia Perpetuo Socorro) constituirán meras fragmentaciones indivisibles de la Iglesia Católica, sin personalidad jurídica propia.); <u>Diocese of Ponce, et al., v. Gonzalez</u>, Civ. Case No. 18-1600 (D.P.R. 2018) ("the dioceses are indivisible fragments of the legal personality of the Roman Catholic Church in Puerto Rico, lacking legal or juridical personality unless formally incorporated."). As such, we agree with the conclusion reached by Judge Delgado-Hernández that the bankruptcy filing, and therefore the automatic stay, "benefits and protects against collection actions and asset attachments and seizures," all the assets of the Roman Catholic Church of Puerto Rico, unless those assets are owned by fragments of the Church that are formally incorporated. . . .

(Adv. Dkt. No. 301.)

Following the court's September 7, 2018 ruling, the debtor requested an extension of time until October 31, 2018 to file the schedules and statement of financial affairs to include the assets from all the dioceses, which the court granted. (Bankr. Dkt. Nos. 47 & 65.) On October 22, 2018, the debtor requested an extension of time until October 30, 2018 to file the monthly operating reports, which the court also granted. (Bankr. Dkt. Nos. 90 & 91.)

On October 30, 2018, the debtor filed the first monthly operating reports for the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao. (Bankr. Dkt. Nos. 107, 108, 109 & 110.) The debtor has continued to file monthly operating reports for these three dioceses throughout the case, the most recent being the January 2019 operating report. (Bankr. Dkt. Nos. 180, 181, 182, 183, 185, 186, 187, 188, 222, 223, 224, 225, 265, 266, 267, 268, 289, 304, 305, 306, & 307.)

On October 31, 2018, the debtor filed an amended petition, statement of financial affairs, and schedules that only included information from the Archdiocese of San Juan and the

Dioceses of Caguas and Fajardo-Humacao. (Bankr. Dkt. Nos. 111, 112, 113, & 114.) The debtor amended the schedules for these three dioceses the following month, and then again in January 2019 in response to requests for further disclosures made by the state court plaintiffs. (Bankr. Dkt. Nos. 141, 158-164, 172-174, 215, 231, 232, 234,237, 238, 239, 240, & 241.)

On November 6, 2018, the debtor filed an amended creditor matrix to include all creditors and parties in interest of the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao. (Bankr. Dkt. No. 117; Bankr. Dkt. No. 322 at ¶ 20.) The debtor has paid all quarterly fees owed to the United States trustee. (Bankr. Dkt. No. 322 at ¶ 10.)

No schedules or statement of financial affairs have been submitted in this case reflecting the assets and liabilities of the Dioceses of Ponce, Mayaguez, and Arecibo. (Bankr. Dkt. No. 322 at ¶ 4.) No monthly operating reports been filed for those dioceses, either. (Bankr. Dkt. No. 322 at ¶ 9.) Nor has the debtor filed a complete creditor matrix to include those dioceses' creditors.

The debtor originally scheduled the state court plaintiffs' claim in the amount of $4,700,000.00, wholly unsecured. (Bankr. Dkt. No. 111-5 at p. 105.) This amount was subsequently amended to $126,000,000.00, reflecting the damages sought by the state court plaintiffs in the consolidated cases. (Bankr. Dkt. No. 232 at p. 192; Bankr. Dkt. No. 322 at ¶ 5.) The claim is marked as disputed, contingent and unliquidated. Id.

The meeting of creditors, which had been rescheduled for December 3, 2018, was not held. (Bankr. Dkt. Nos. 8 & 189; Bankr. Dkt. No. 322 at ¶ 7.) The United States trustee cited as grounds the debtor's failure to file the schedules, statement of financial affairs and other documents regarding the Dioceses of Ponce and Mayaguez. (Bankr. Dkt. No. 189.) The United

States trustee moved to dismiss the case on these grounds, but subsequently withdrew the motion. (Bankr. Dkt. Nos. 190, 295 & 310.)

On October 26, 2018, the Dioceses of Ponce and Mayaguez moved to partially withdraw the reference to the district court , which the state court plaintiffs opposed. (Bankr. Dkt. Nos. 100 & 128.) The Dioceses of Ponce and Mayaguez later moved to stay the proceedings in bankruptcy court pending a determination by the district court of the motion to withdraw the reference. (Bankr. Dkt. No. 194.) At a hearing held December 7, 2018, this court denied the motion to stay proceedings, and advised the dioceses that if they wished to seek relief from the bankruptcy court, they must do so through their duly appointed legal counsel. (Bankr. Dkt. No. 201.) The motion for partial withdrawal of the reference was subsequently denied by the district court, as was a motion for reconsideration. (Bankr. Dkt. No. 322 at ¶¶ 35, 37 & 38.)

On November 14, 2018, the state court plaintiffs filed a motion to compel the debtor to file the schedules, statement of financial affairs, and monthly operating reports for the Dioceses of Ponce and Mayaguez. (Bankr. Dkt. No. 141; Bankr. Dkt. No. 322 at ¶ 23.) The motion also sought additional disclosures from the debtor regarding the value of real estate located in the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao and further information concerning any transfers of assets made by the debtor to the Diocese of Arecibo following its incorporation. Id.

At a hearing held December 21, 2018, the debtor was ordered to inform the court by January 10, 2019 of the position of the Dioceses of Ponce, Mayaguez, and Arecibo regarding their involvement, going forward, in the bankruptcy case. (Bankr. Dkt. No. 215; Bankr. Dkt. No. 322 at ¶ 36.) The court stated that if the debtor intended to continue with the reorganization

8

process, it must provide, by January 18, 2019, a proposed schedule for the holding of the meeting of creditors and proposed deadlines for filing an amended petition, schedules, statement of financial affairs, and other documents required by the United States trustee. Id. The debtor was also advised of the need to file, "as quickly as possible, a complete creditor matrix and to amend the petition to include a complete and accurate list of all the debtor's employer identification numbers." Id. With regard to the Diocese of Arecibo, the court sought information regarding "whether the debtor's schedules will include property within the territorial limits of the Diocese of Arecibo that was not legally transferred to the newly incorporated diocese under the laws of Puerto Rico prior to the bankruptcy filing." (Bankr. Dkt. No. 209.)

On January 10, 2019, the debtor filed an informative motion, stating that it had not been successful in persuading the Dioceses of Ponce, Mayaguez, and Arecibo to turn over the relevant information. (Bankr. Dkt No. 226; Bankr. Dkt. No. 322 at ¶ 39.) Nevertheless, the debtor indicated that it wished to continue with the bankruptcy process. Id.

On January 14, 2019, the Archdiocese of San Juan and the Dioceses of Ponce, Mayaguez and Fajardo-Humacao filed a writ of certiorari before the United States Supreme Court, seeking review of the opinion and order issued by the Puerto Rico Supreme Court on June 11, 2018. (Bankr. Dkt. No. 322 at ¶ 40.) The writ is still pending adjudication.

In his testimony, Father Saenz Ramos confirmed that the Dioceses of Ponce, Mayaguez, and Arecibo have refused to participate in this bankruptcy case. He explained that under the Roman Catholic Church's internal law, called the Code of Canon law, each diocese of the Catholic Church functions independently. The head of each diocese, called a bishop, is

"independent, autonomous and sovereign in [his] own territory." (Bankr. Dkt. No. 327 at p. 5.) Thus, despite the efforts of debtor's counsel and various members of the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao to persuade those dioceses to participate in the case, there is no mechanism under Canon law for any diocese to force another to do so. Father de Angel echoed this sentiment, testifying that "under the Canon law, no diocese can exercise authority over another diocese." (Bankr. Dkt. No. 327 at p. 8.)

The court accepts the testimony of Father Saenz Ramos and Father de Angel as an accurate representation of how Canon law governs the internal workings of the Roman Catholic Church and intra-church disputes. The court also found the two witnesses' testimonies to be very credible with regard to the efforts undertaken by the debtor's counsel and representatives of the other dioceses to persuade the Dioceses of Ponce, Mayaguez, and Arecibo to participate in the bankruptcy process.

The court also heard testimony from Ms. Barroso, the debtor's reorganization expert, indicating that the debtor was in the process of drafting a plan of reorganization, which she anticipated completing within 30 days. The proposed plan would be funded by available cash on-hand, the sale of several properties located in the Archdiocese of San Juan and/or by obtaining post-petition financing secured by real property in the Archdiocese, as well as by the funds remaining in the pension trust. Mr. Portela, the debtor's realtor, testified as to his efforts to market and sell several valuable properties located in the Archdiocese of San Juan to fund the plan, as well as the possibility of obtaining post-petition financing secured by real property located in the Archdiocese. The court also heard testimony from Mr. Lugo in which he opined that the proposed plan would offer creditors, specifically the state court plaintiffs, a more

10

favorable outcome than they would receive if the case were dismissed.  The court finds these three witnesses' testimonies credible to the extent they portray the debtor's efforts to draft a plan of reorganization based only on the assets and liabilities of the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao.

**IV.      Legal Analysis and Discussion.**

Section 1112(b) of the Bankruptcy Code provides for the dismissal or conversion of a chapter 11 case upon a finding of cause.  The initial burden is on the movant to argue and present evidence, by a preponderance-of-the-evidence standard, to prove that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate.  See Collier on Bankruptcy  ¶1112.04[4] (Richard Levin & Henry J. Sommer, eds., 16th ed.).  "Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative."  Id.

Once the movant establishes cause, the burden shifts to the debtor to demonstrate by evidence "unusual circumstances" that establish that dismissal or conversion to chapter 7 is not in the best interests of the creditors and the estate.   See 7 Collier on Bankruptcy at ¶1112.05[2]. The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate.  See Id.; Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008).   A determination of unusual circumstances is fact intensive and contemplates facts that are not common to chapter 11 cases.  See 7 Collier on Bankruptcy at ¶1112.05[2].

11

When cause is established, the debtor or other parties opposing the section 1112(b) motion must also establish all of the factual elements stated in subparagraphs (A) and (B) of section 1112(b)(2) in order to defeat a motion to dismiss or convert. See 7 Collier on Bankruptcy at ¶1112.05[2]. A case must not be converted or dismissed if the bankruptcy court finds that: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the 'cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D. N.M. 2008) aff'd., 421 B.R. 602 (B.A.P. 10th Cir. 2009). If there are no "unusual circumstances," then the bankruptcy court must apply the section 1112(b)(2) analysis to determine whether the chapter 11 case should be dismissed or converted.

Subsection 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of 16 different examples of cause. In addition to granting relief under one of the expressly described examples of cause in section 1112(b)(4), the court may also dismiss a chapter 11 case for lack of good faith. See 7 Collier on Bankruptcy at ¶1112.07[1].

Here, the state court plaintiffs seek dismissal of the bankruptcy case under section 1112(b)(4)(F), due to an "unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [chapter 11]," and section 1112(b)(4)(E), for "failure to comply with an order of the court." (Bankr.. Dkt. No. 278); 11 U.S.C. § 1112(b)(4)(E)&(F). Specifically, the movants argue that at

12

the hearing held September 7, 2018 in adversary proceeding 18-00099, the court made clear that the bankruptcy estate in this case is comprised of "all the assets of the Roman Catholic Church of Puerto Rico, unless those assets are owned by fragments of the Church that are formally incorporated." (Adv. Dkt. No. 278 at p. 10.) The Dioceses of Mayaguez and Ponce are not separately incorporated entities, and thus cannot hold title to any property. Id. Therefore, assets held by the Roman Catholic Church within those dioceses are property of the estate and must be disclosed. Id. The debtor's failure to file the schedules, statement of financial affairs, monthly operating reports, and other required disclosures for the Dioceses of Ponce and Mayaguez, and as to any property transferred by the debtor to the Diocese of Arecibo after its incorporation, within the deadlines set by the court, they argue, constitutes cause for dismissal under section 1112(b)(4)(E) and (F). (Adv. Dkt. No. 278 at pp. 8-11.)

In its opposition, the debtor contends that the motion to dismiss should be denied as premature given that the decision of the Supreme Court of Puerto Rico this court relied on for its September 7, 2018 order has been appealed to the Supreme Court of the United States.[2] (Bankr. Dkt. No. 303 at pp. 6-9.) The writ of certiorari, filed January 14, 2019, is still pending adjudication.

The debtor further argues that "extraordinary circumstances" counsel against dismissal, namely that the Roman Catholic Church and its dioceses are governed by Canon law, and that under that law one diocese has no authority over another. (Bankr. Dkt. No. 303 at pp.

---

[2]/The debtor also references an appeal pending in the United States Court of Appeals for the First Circuit that, it argues, calls into question whether the June 11, 2018 opinion by the Supreme Court of Puerto Rico is a final order. (Bankr. Dkt. No. 303 at pp. 8-9); see Civil Case No: 18-1931 (1st Cir.). That appeal is currently stayed due to the bankruptcy filing.

5-6.) As relevant here, this means that one diocese cannot force another to participate in the bankruptcy process. Id. This has led to an unusual situation in which some of the church dioceses have cooperated fully during the bankruptcy case, making all the requisite disclosures and paying all quarterly fees owed to the United States trustee, whereas others, Ponce, Mayaguez, and Arecibo, have not. Without the cooperation of all the dioceses, the debtor argues, it is impossible to obtain the necessary information, given the large number of independent economic units located in each diocese. Id.

Finally, the debtor argues that dismissal is not in the best interests of the creditors. (Bankr. Dkt. No. 303 at pp. 9-12.) The debtor asserts that it will be proposing a plan of reorganization shortly. (Bankr. Dkt. No. 303 at p. 11.) The debtor also suggests, as an alternative remedy, that the court enter an order lifting the automatic stay as to estate property found in the Dioceses of Ponce and Mayaguez.[3] (Bankr. Dkt. No. 303 at pp. 17-21.)

At the outset, to the extent that the debtor seeks to call into question this court's September 7, 2018 ruling due to the pending appeal of the state court case before the Supreme Court of the United States, this court maintains its position that the bankruptcy estate in this case is comprised of "all the assets of the Roman Catholic Church of Puerto Rico, unless those assets are owned by fragments of the Church that are formally incorporated." In making this determination, this court relied on Acevedo Feliciano, and the Puerto Rico Supreme Court's reasoning therein, as well as the decision by the district court of Puerto Rico in the Diocese of

---

[3] In its opposition to the motion to dismiss, the debtor also claims that the June 11, 2018 opinion of the Puerto Rico Supreme Court violates the First Amendment of the Constitution of the United States to the extent it "altered and changed the organizational internal structure of the Church and the administration of its assets." (Bankr. Dkt. No. 303 at pp. 15-17.) This court's understanding is that this issue is not properly before it, but rather is an issue that may be decided by the Supreme Court of the United States if the Court grants the writ of certiorari currently pending.

Ponce case, which has not been appealed. The Court also notes that at this time the writ of certiorari is pending adjudication by the Supreme Court of the United States, and that even if the case were accepted for review, it may take months to decide. Given this, this court will continue to give effect to its September 7, 2018 ruling.

Dismissal under 1112(b)(4)(E)&(F)

Under section 521(a)(1), the debtor is obligated to file, among other things, a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. 11 U.S.C. § 521(a)(1). These documents must be filed within 14 days after the filing of the petition, unless the court, for cause, extends this deadline. Fed. R. Bankr. P. 1007(c). Chapter 11 debtors in possession are also required to file monthly operating reports under penalty of perjury, due, in this jurisdiction, on the 21st day of the subsequent month. 11 U.S.C. § 704(a)(7) and (8); 11 U.S.C. § 1106(a)(1); 11 U.S.C. § 1107(a); and PR LBR 2015-2(a).

In this case, the bankruptcy petition was filed on August 29, 2018. The court granted the debtor's requests to extend the deadline to make the required disclosures, setting October 30, 2018 as the deadline to file the first monthly operating report, and October 31, 2018 as the deadline to file the schedules and other documents. The Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao filed timely the requisite disclosures, which they have subsequently amended. The Dioceses of Ponce and Mayaguez did not do so. As to the Diocese of Arecibo, since it was incorporated six-days prior to the filing of the bankruptcy petition, the debtor's schedules would only need to contain all property "not legally transferred [by the debtor] to the newly incorporated diocese under the laws of Puerto Rico

15

prior to the bankruptcy filing." (Bankr. Dkt. No. 209.) At the hearing, no evidence was submitted as to whether or not the debtor complied with the required disclosures regarding the Diocese of Arecibo.

At a hearing held December 21, 2018, the court addressed the continued failure of the debtor to provide the required disclosures as to the Dioceses of Ponce, Mayaguez, and Arecibo. (Bankr. Dkt. Nos. 215 & 218.) The court granted the debtor a final extension to comply with the reporting requirements, stating:

> The debtor is ordered to file on or before January 10, 2019 an informative motion stating the position of the Diocese of Ponce, the Diocese of Mayaguez and the Diocese of Arecibo regarding the bankruptcy filing under Chapter 11. If the debtor intends to continue with the reorganization process, the parties are to file, by January 18, 2019, a proposed order rescheduling the meeting of creditors and setting deadlines for the debtor to file an amended petition, schedules, the statement of financial affairs, and other documents required by the U.S. trustee.

(Bankr. Dkt. No. 215.)

The debtor responded on January 10, 2019 that it had been unable to persuade those dioceses to take part in the bankruptcy process. (Bankr. Dkt. No. 226.)

Therefore, as it stands now, more than six months after the bankruptcy case was filed, the schedules, statement of financial affairs, monthly operating reports, creditor matrix, and petition do not include the information corresponding to the Dioceses of Ponce and Mayaguez, and are thus incomplete.[4]

---

[4] Since the movant did not establish at the hearing that there was any property located in the territorial limits of the Diocese of Arecibo that had not been legally transferred to the newly incorporated diocese under the laws of Puerto Rico, the court does not find cause to dismiss under section 1112(b)(4)(E)&(F) as to property located in that diocese.

16

The court finds that this constitutes "cause" for dismissal under section 1112(b)(4)(E)&(F). See In re Tornheim, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) ("Refusal or inability to provide financial disclosure sounds the death knell of a Chapter 11 case. The failure to file monthly operating statements . . . 'whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings.'")(citations omitted); In re Costa Bonita Beach Resort, 513 B.R. 184, 199 (Bankr. D.P.R. 2014) (finding cause to dismiss or convert existed under section 1112(b)(4)(F) where the debtor filed four missing monthly operating reports just prior to the commencement of the hearing on the motion to dismiss); In re Fite, LLC, 2018 Bankr. LEXIS 1327, at *14 (Bankr. D. Or. Apr. 30, 2018) (finding cause for dismissal under section 1112(b)(4)(F) due to the failure to file accurate schedules and statement of financial affairs, to report specific assets, and to file complete monthly operating reports); In re Sanders, 2010 Bankr. LEXIS 4590, at *12-*13 (Bankr. D.S.C. Apr. 29, 2010) (failure to file accurate and complete schedules and financial statements more than four months after the filing of the petition constitutes cause for conversion under section 1112(b)(4)(F)).

Having established cause for dismissal, the burden then shifts to the debtor to both "specifically identif[y] unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate," and show that there is "a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time," and that the grounds for conversion or dismissal include an act or omission "for which there exists a reasonable justification" and "that will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2)(A)&(B). The court notes that since the debtor in this case

17

is a nonprofit entity, the case cannot be converted to chapter 7 unless requested by the debtor. 11 U.S.C. § 1112(c). The court will address each requirement in order.

Unusual Circumstances

The debtor maintains that the internal governance structure of the Roman Catholic Church under Canon law constitutes "unusual circumstances," and given the complex organization of each diocese, which is comprised of various parishes, schools and other economic units, that dismissal is not in the best interests of creditors or the estate. (Bankr. Dkt. No. 303 at pp. 5-6.) Mr. Lugo testified that dismissal in this case would not appear to greatly improve the creditors' circumstances, at least in the short term. If the case were dismissed, the state court plaintiffs could again move to attach the assets of the Roman Catholic Church in Puerto Rico. However, this would only be a prejudgment attachment. The consolidated cases would still need to be litigated to judgment in state court, which, per Mr. Lugo's testimony, would mean it could take years before any of the state court plaintiffs receive any relief. In contrast, the debtor asserts that a "plan of reorganization [would] be the only vehicle that [would] allow all plan participants to receive payment in an orderly and equitable fashion." (Bankr. Dkt. No. 303 at p. 11.) The court addresses the debtor's proposed plan of reorganization in more detail below. In any event, given that the court finds below that the debtor does not meet the other requirements of section 1112(b)(2)(A)&(B), the court does not need to decide now whether the Roman Catholic Church's internal structure under Canon law qualifies as "unusual circumstances" showing that dismissal is not in the best interest of creditors or the estate.

18

<u>Reasonable likelihood that a plan will be confirmed</u>

At the hearing, the court heard testimony from Ms. Barroso, Mr. Portela, and Mr. Lugo regarding the debtor's efforts to finalize a plan of reorganization within the next 30 days. The proposed plan would be funded by available cash on-hand, the sale of several properties located in the Archdiocese of San Juan, or by post-petition financing secured by real properties in the Archdiocese, as well as by funds remaining in the pension trust.

The problem, however, with this proposed plan is that it only takes into consideration the assets, liabilities, and creditors of part of the debtor: the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao. The Bankruptcy Code requires complete disclosure, it does not allow for piece-meal bankruptcy. As one court stated, "[b]ankruptcy is a give-and-take process, and, in order for debtors to receive the benefits and protections of the Bankruptcy Code, they must fulfill their role of complete disclosure to their creditors and the Court." <u>In re Justice</u>, 2002 Bankr. LEXIS 1857, at *11 (Bankr. D.S.C. Aug. 29, 2002). While the court sympathizes with the debtor's predicament, it cannot permit a debtor to make an end-run around the Bankruptcy Code, whether by allowing it to only partially comply with the disclosure requirements, or by lifting the automatic stay as to the assets of the non-complying dioceses, as the debtor proposed.

Without the information regarding the Dioceses of Ponce and Mayaguez, creditors, parties in interest, the United States trustee, and the court still do not have a complete list of the debtor's assets and liabilities, a bankruptcy petition that includes all of its employee identification numbers, or an accurate list of all of the debtor's creditors. Nor have reports been filed regarding a significant portion of the debtor's operations. "The reporting

requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a "mere technicality." In re Whetten, 473 B.R. 380, 384 (Bankr. D. Colo. 2012)(citation omitted). Under these circumstances, the debtor cannot propose a confirmable plan, since, among other things, the debtor would not be in compliance with section 1129(a)(2) ("the proponent of the plan complies with the applicable provisions of [chapter 11].")

Act or omission that will be cured "within a reasonable period of time"

The debtor also cannot satisfy the requirement that the grounds for dismissal be an act or omission "for which there exists a reasonable justification" and "that will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2)(B). Even if the court were to find that Canon law provides a reasonable justification for why the assets and liabilities corresponding to the Dioceses of Ponce and Mayaguez have not been disclosed, the debtor has not established any evidence that these omissions will be cured "within a reasonable period." The evidence submitted by the debtor at the hearing, in fact, proves the opposite.

Since the beginning of the case, the court has recognized the peculiar nature of the debtor, and the scope of the work necessary to gather the relevant financial information from the dioceses, parishes and other economic units located within those dioceses. The court heard credible testimony regarding those efforts from Ms. Barroso and Mr. Lugo. With that in mind, the court has been very accommodating, significantly extending various disclosure deadlines for the debtor on a number of occasions. And, the court here recognizes the effort

demonstrated by the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao in complying with the various disclosure requirements. As for the other dioceses, however, it is not a matter of needing additional time. Per the testimonies of Father Saenz Ramos and Father de Angel, those dioceses simply refuse to take part in this bankruptcy process. And, without their cooperation, the debtor cannot otherwise procure the needed information. As the debtor conceded,"it has been impossible, after exhausting all means reasonably available, to obtain the data for Ponce, Mayaguez and Arecibo." (Bankr. Dkt. No. 303 at p. 3.)

Ultimately, this refusal has doomed the bankruptcy case. There is no evidence presented, either through witness's testimony or other means, that the failure to provide the requisite disclosures "will be cured within a reasonable time." For example, the debtor has not even been able to provide any assurances that the disclosures would be forthcoming in the event that the writ of certiorari is denied by the Supreme Court of the United States.

This debtor is divided against itself. And, as the Bible warns, "[i]f a household is divided against itself, that household can never last." Mark 3:25.

21

**V.      Conclusion.**

For the reasons stated above, the court grants the motion to dismiss filed by the state court plaintiffs at docket number 278.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 18th day of March, 2019.

Edward A. Godoy
U.S. Bankruptcy Judge