## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF PUERTO RICO

IN RE:

ARQUIDIOCESIS DE SAN JUAN DE
PUERTO RICO,

       DEBTOR.

CASE NO. 18-04911 (EAG)

CHAPTER 11

FILED & ENTERED ON 04/25/2019

### OPINION AND ORDER

Before the court is the debtor's motion for a stay pending appeal, the state court plaintiffs' opposition thereto, and the debtor's reply. (Bankr. Dkt. Nos. 358, 378 & 383.) For the following reasons, the court imposes a limited stay, as detailed below.

### I.  Procedural History.

On March 18, 2019, following an evidentiary hearing, the court entered an opinion and order granting the motion to dismiss filed by the state court plaintiffs.[1] (Bankr. Dkt. No. 352.) That same day, the debtor appealed the dismissal order to the United States Bankruptcy Appellate Panel for the First Circuit (the "BAP"). (Bankr. Dkt. No. 353.)

The following day, on March 19, 2019, the debtor moved this court to stay the dismissal order until its appeal was decided by the BAP. (Bankr. Dkt. No. 358); see BAP No. PR 19-017. The matter was set for a hearing on April 16, 2019, and the court granted the debtor's request to stay the proceedings on an interim basis pending the resolution of the debtor's motion. (Bankr. Dkt. Nos. 357, 359 & 360.) On April 8, 2019, the state court plaintiffs filed an

---

[1]/A more detailed summary of the case's procedural history can be found in the court's March 18, 2019 opinion and order. (Bankr. Dkt. No. 352.)

opposition to the debtor's stay motion. (Bankr. Dkt. No. 378.) On April 15, 2019, the debtor replied.[2] (Bankr. Dkt. No. 383.)

During the hearing, the court heard testimony from Father Jorge Luis Saenz Ramos, the Judicial Vicar of the Archdiocese of San Juan; and Doris Barroso Vicens, the debtor's restructuring analyst. For each witness, a declaration under penalty of perjury was read into the record in lieu of the witness's direct testimony. (Debtor's Exs. E & F.) The witnesses were sworn in and were available for cross-examination and re-direct. At the conclusion of the hearing, the matter was taken under advisement.

## II. Jurisdiction.

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[3] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## III. Findings of Fact.

After careful consideration of the witnesses' testimonies and the contents of the documents introduced as evidence, the court makes the following findings of fact and

---

[2] At the hearing, the court granted the debtor's request for leave to reply, filed April 10, 2019. (Bankr. Dkt. No. 380.)

[3] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

conclusions of law pursuant to Rule 52(a), made applicable to this contested matter by Bankruptcy Rules 7052 and 9014(c).

Father Saenz Ramos testified that prior to the bankruptcy filing, the state court plaintiffs executed pre-judgment attachment orders in the total amount of $4,700,000.00 over bank accounts in Banco Popular de Puerto Rico belonging to the Archdiocese of San Juan and various parishes located within the Archdiocese. This "left the Archdiocese and its parishes without sufficient funds to fulfill their Catholic mission and provide essential services to the Catholic faithful and indigent communities." (Debtor's Ex. E.) He estimated that there are approximately one million Catholics in the Archdiocese alone.

Father Saenz Ramos also testified that the attachments caused an "erosion of confidence in the [Church] by the public and the Catholic faithful." Id. He stated that following the freezing of the Church's bank accounts, there was a significant reduction in donations by parishioners, who were unsure whether their donations would still go to fund the Church's various outreach programs. Donations have not returned to prior levels even after the bank accounts were unfrozen following the filing of the bankruptcy case.

Father Saenz Ramos asserted that if the state court plaintiffs were to attach the bank accounts again now that the bankruptcy case has been dismissed, it would have the same effect. The Church would be unable to meet its financial obligations to creditors, "including but not limited to utilities, mortgages, governmental institutions and vendors." Id. The parishes would also be unable to maintain payments for health plans that cover employees, including active and retired priests. Numerous charitable programs supported by the Church would also suffer. It would also impact the Church's ability to pay its employees timely, which

3

would likely lead some to resign or seek other employment. The court finds Father Saenz Ramos's testimony on these matters to be credible.

Ms. Barroso testified that per the monthly operating report for February 2019, the aggregate ending balance for the Archdiocese of San Juan and the Dioceses of Caguas and Fajardo-Humacao was approximately $9,800,000.00. (Debtor's Ex. F; Bankr. Dkt. No. 364.) Over 90% of this balance is attributable to funds held by 198 parishes and 8 Catholic schools. If the state court plaintiffs attached the debtor's bank accounts again, the parishes and schools would be most affected. This would impact the schools' ability to continue operating, leaving them unable to make payroll, and would likely lead to many students changing schools. Any interruption in the schools' operations would not only also negatively affect students, but also would damage the debtor's good will in the community, and would likely lead to a sustained decrease in Catholic school enrollment. The court finds Ms. Barroso's testimony to also be credible.

## IV. Legal Discussion.

Bankruptcy Rule 8007 governs motions for stay pending an appeal. Courts consider the traditional four-part standard applicable to preliminary injunctions. See Acevedo-García v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir.2002). The court must consider "(1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies." In re Triple A & R Capital Inv. Inc., 2015 Bankr. LEXIS 723 at *2-3 (Bankr. D.P.R. 2015). "In essence, the issuance of a stay depends on 'whether the harm caused [movant] without the [stay], in light of the [movant's] likelihood of

eventual success on the merits, outweighs the harm the [stay] will cause [the non-moving party].'" Acevedo-Garcia, 296 F.3d at 16-17 (quoting United Steelworkers of America v. Textron, Inc., 836 F.2d 6, 7 (1st Cir. 1987)). The United States Supreme Court has stated that the first two factors are the "most critical" in the analysis. Nken v. Holder, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009). But, the "[f]ailure to satisfy even one of those requirements justifies denial of the stay." Fraterfood Serv. v. DDR Del Sol, LLC (In re Fraterfood Serv.), 2015 Bankr. LEXIS 3081 at *2 (Bankr. D.P.R. 2015). "A court has substantial discretion under Rule [8007] to grant (or deny) a stay pending appeal on such terms as it may deem appropriate, subject to an abuse of discretion standard of review." Triple A & R Capital Inv. Inc., 2015 Bankr. LEXIS 723 at *2.

As to the first prong, whether the debtor has made a strong showing of success on the merits, most–if not all–of the arguments raised by the debtor in its motion to stay pending appeal were considered and rejected by the court in its adjudication of the state court plaintiffs' motion to dismiss. (Bankr. Dkt. No. 358 at pp. 4-22; Bankr. Dkt. No. 352.) Nevertheless, the court acknowledges that this case is sui generis in that the debtor is an entity whose rights derive ultimately from the Treaty of Paris of 1898, which ended the Spanish-American War, and the Concordats of 1851 and 1859, negotiated between the Spanish monarchy and the Vatican. This is not a typical debtor incorporated under state law. Even the case law cited by the state court plaintiffs in their motion to dismiss is not entirely on point, since those cases concern churches incorporated under state law. (Bankr. Dkt. No. 278 at p. 10.) Thus, "[n]otwithstanding this [c]ourt's confidence in the rectitude of its decision," the court finds that the debtor meets the first factor. In re Miraj & Sons, Inc., 201 B.R. 23, 26-27

(Bankr. D. Mass. 1996) (finding the first prong to be "minimally satisfied" where the case was "intricate," the facts "disputed and complex," the law "unsettled," and the application of the law "difficult.").

Regarding the second factor, irreparable harm, the court finds this also favors the debtor. The testimonies of Father Saenz Ramos and Ms. Barroso, both of whom the court found to be credible, detailed the financial harm that the attachments caused the debtor and would cause again if no stay were put in place. This harm was not limited to the Church itself, but also to the numerous charitable programs it supports as well as to the Catholic schools in those dioceses. The witnesses also explained the long-term reputational damage the freezing of the accounts would have on the Church, which would likely lead to a further reduction in donations by parishioners and enrollment in Catholic schools. The court notes that the state court plaintiffs did not put forth any witness to challenge Father Saenz Ramos's and Ms. Barroso's testimonies.

Turning to the third factor, whether the issuance of a stay will injure other parties, the court first notes that the state court plaintiffs' counsel informed the court at the hearing that they are currently unable to proceed with the execution of the pre-judgment attachment orders for reasons unrelated to this bankruptcy case. If this is the case, then the imposition of a stay pending appeal would cause them no further harm. In any event, the court finds that any harm to the state court plaintiffs from the issuance of a stay can be minimized by crafting a narrowly tailored stay order. See Triple A & R Capital Inv. Inc., 2015 Bankr. LEXIS 723 at *2; In re Fiesta Inn & Suites, LP, 2009 Bankr. LEXIS 4176, at *9 (Bankr. W.D. Tex. Dec. 21, 2009) (Bankruptcy Rule 8007 "gives the court the power to fashion appropriate relief . . . [and] courts may

6

be called upon to craft unique relief in order to permit the appeal to proceed without jeopardizing the progress of the underlying bankruptcy case.") The court therefore finds that the third prong also favors the debtor.

Finally, as to the fourth factor, the public interest, the court is persuaded that staying the case until the appeal is decided by the BAP is in the public's best interest. In addition to the impact the attachment of the debtor's bank accounts would have on the debtor and the community outlined above, the case touches on First Amendment issues, and the court prefers to tread lightly in this area.

**V.      Conclusion.**

In light of the foregoing, the court grants in part the debtor's motion to stay pending appeal at docket number 358, as follows: the court hereby imposes a stay on any attempt to attach any debtor-in-possession bank account(s) identified in the debtor's monthly operating reports until the appeal (BAP No. PR 19-017) is decided by the BAP. The interim stay, entered by this court at docket number 360, is terminated.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 25th day of April, 2019.

Edward A. Godoy
U.S. Bankruptcy Judge